**Jennie Mahlstedt, Executrix, Appellee, v. Ideal Lighting Company, Appellant.**

**Gen. No. 5,902.   (Not to be reported in full.)**

Appeal from the Circuit Court of Rock Island county; the Hon. Robert W. Olmsted, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 13, 1914. Rehearing denied April 8, 1915.

## Statement of the Case.

Action brought by Jennie Mahlstedt, executrix of the last will and testament of Daniel Mahlstedt, deceased, against the Ideal Lighting Company to recover damages for the death of the plaintiff's intestate caused by the explosion of gas which escaped into a cellar from a gasoline lighting and heating plant installed by the defendant. From a judgment for $6,333 in favor of the plaintiff, the defendant appeals.

The Ideal Lighting Company was a corporation engaged in the manufacture for sale of gasoline lighting and heating systems. Daniel Mahlstedt, husband of

appellee, was a farmer. Whiteside Brothers were merchants, and H. Busier was a salesman for appellant.

The appellant, at its factory, delivered to Mahlstedt a lighting and heating outfit for installation in his farm house, pursuant to an arrangement that had been made with him by Busier. The appellant then sent Whiteside Brothers an invoice of the items, "Sold to Dan Mahlstedt and charged to Whiteside Brothers," with a letter saying: "We trust you will lose no time in installing the outfit for our customer." The arrangement was that Whiteside Brothers should furnish some necessary material for the installation and attend to the work, and that appellant would send an expert to help on the last day of the work, and to start the plant. The work was started by one of the Whiteside Brothers, and the carburetor and a gasoline tank were placed in a hole in the yard twenty or thirty feet from the building, where, if uncovered, they would be exposed to the direct rays of the sun. Busier came the next morning, stayed all day and was active in the work. The system was started in the evening on Busier's suggestion, and Mrs. Mahlstedt used it in preparing supper. There was something more to be done, and Busier and Whiteside left Saturday with the intention that Whiteside should return and complete the work. The tank and carburetor were left uncovered although they should have been covered, to prevent heating from the sun's rays before using the plant in daylight. The next day, Sunday, was a bright, hot day. The family used the plant, and towards night were unable to light a burner, and Mahlstedt going into the basement of his house to investigate, lighted a match and was fatally injured by an explosion of gas.

Whiteside Brothers had previously purchased similar lighting systems for their customers, and had some but not much experience in installing them. This sale was brought about by Busier applying to Whiteside Brothers to accompany him in a canvass of the

country, and one of the brothers was with Busier at the time of the sale in question. When Mahlstedt removed the machinery from appellant's factory he apparently did not know whether he was buying it from appellant or Whiteside Brothers, and when he asked whom he should pay, he was told by one of appellant's officers that it made no difference, he could pay either, as he pleased. An invoice was sent to Whiteside Brothers subject to a commission discount. It is contended by appellant that the transaction amounts to a sale and installation of the plant by Whiteside Brothers, and that it is not liable for defects in installation; and that the evidence showed no defect in the machine. There was little question but that the cause of the accident was the effect of the sun's heat on the gasoline in the carburetor during Sunday, and that had it been covered before it was so heated, the accident would not have occurred. Whiteside testified that when he left Saturday night he told Mahlstedt that the carburetor must be covered before using to prevent heating the gasoline, and that Busier, who was taking part in the conversation, said it would not make much difference. There was evidence that Busier said he had never before installed a plant, but it did not appear that Mahlstedt heard him say it or knew that fact.

SEARLE & MARSHALL, for appellant.

GEORGE W. WOOD, for appellee.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

### Abstract of the Decision.

1. NEGLIGENCE, § 20*—*when manufacturer of gas plant liable for explosion.* Where the manufacturer furnished a gasoline lighting and heating plant for installation in a residence, and through the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

negligence of those in charge of the work an explosion occurred、 and killed the purchaser, the evidence in an action against the manufacturer *held* to show that the latter and not a retail hardware dealer who installed the plant was the seller and answerable for the accident.

2. NEGLIGENCE, § 82*—*when purchaser may rely on assurance of safety of gas plant.* Where a purchaser of a gasoline lighting and heating plant was killed by an explosion due to the carburetor and connecting pipes leading into a dwelling being left uncovered on a hot day, the deceased *held* not guilty of contributory negligence in attempting to use the plant in that condition, where he was assured by the seller's agent that the failure to cover such apparatus did not preclude the use of the plant.

3. PRINCIPAL AND AGENT, § 8*—*sufficiency of evidence to show agency.* The evidence in an action against a manufacturer to recover for the death of a purchaser, from the explosion of a gasoline lighting and heating plant, *held* sufficient to show that the person having supervision of its installation was the manufacturer's agent.

4. WITNESSES, § 66*—*when disqualified by interest in fixing liability on party.* Testimony of persons who have an interest in fixing liability on one of the parties to an action cannot be disregarded by reason of the fact that the death of an agent of such party prevents the contradiction of the testimony of such witness.

5. WITNESSES, § 113*—*when wife of deceased agent incompetent witness.* The widow of a deceased agent cannot under section 5 of the Evidence and Depositions Act (J. & A. ¶ 5522) testify to statements or admissions made by him within the scope of his agency to a third person.

6. WITNESSES, § 113*—*when widow not competent witness.* A widow is not competent at common law to testify to admissions or conversations of her deceased husband either to her or a third person.

7. WITNESSES, § 113*—*when widow competent witness.* A widow may testify to facts relating to a transaction in which her husband was interested, but not to conversations with the latter, nor to controverted material facts which she would be presumed to have learned by means of the marriage relation.

8. NEGLIGENCE, § 198*—*when question of contributory negligence for jury.* Whether it was contributory negligence for the purchaser of a gasoline lighting and heating plant to light a match in a. cellar into which gas had escaped, *held·* a question for the jury.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

9. Instructions, § 4*—*duty of court to give instructions on own motion.* A court is not bound to give instructions on its own motion, although it must pass upon and give or refuse those prepared and tendered by the parties to an action.